**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAGOMED BATYZHEV,<br><br>                Petitioner,<br><br>     v.<br><br>DEPARTMENT OF HOMELAND SECURITY, ET AL.,<br><br>                Respondents. | Case No. 5:26-cv-00499-MBK<br><br>ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS |

Petitioner Magomed Batyzhev, a native and citizen of Russia, is in the custody of the Department of Homeland Security at the Adelanto Detention Facility. On July 22, 2025, Mr. Batyzhev withdrew his application for asylum and an Immigration Judge ordered his removal, designating Thailand as the country of removal and permitting his removal to any country other than Russia. Mr. Batyzhev's wife is a national of Thailand and currently resides

there. Since that time, Respondents have not obtained the necessary travel documents for Mr. Batyzhev to be removed to Thailand.

Because the Government has not demonstrated that Mr. Batyzhev has failed to cooperate in obtaining travel documents or that his removal is reasonably foreseeable, the Court finds that Mr. Batyzhev's ongoing detention is not authorized by 8 U.S.C. § 1231(a)(6). The Court therefore grants the Petition and issues a writ of habeas corpus requiring his release, subject to appropriate conditions of supervision.

## I.     FACTUAL AND PROCEDURAL HISTORY

Petitioner Magomed Batyzhev is a 33-year-old citizen and national of Russia. Dkt. 9 at 2. After refusing to join the Russian army in the war with Ukraine, Petitioner fled Russia. *Id*. Petitioner entered the United States on May 7, 2023, through United States Customs and Border Patrol's "CBP One" program. Dkt. 1 at 1. Petitioner thereafter timely applied for asylum and was scheduled for a hearing on his application in February 2027. *Id*. During his time in the United States, Petitioner has no criminal arrests or convictions and has complied with his conditions of release. *Id*. at 1-2. On June 26, 2025, immigration officers suddenly arrested Petitioner. *Id*. at 2. Since that time, Petitioner has remained in Respondent's custody at the Adelanto Detention Facility in Adelanto, California.

On July 22, 2025, Petitioner appeared at a hearing in Immigration Court, at which he withdrew his asylum application. Dkt. 1 at 2. It is unclear what exactly transpired at the hearing. Petitioner indicates that he requested a credible fear interview, due to his fear of persecution in Russia. Dkt. 9 at 1. Although the IJ ultimately accepted Petitioner's withdrawal of his asylum application and ordered Petitioner's removal, the IJ apparently found some

1  credence to Petitioner's fears, as he designated Petitioner's country of removal
2  as Thailand and permitted his removal to "any third country other than
3  Russia." Dkt. 6-1 at 3 (removal order). Petitioner agreed to be removed to
4  Thailand, where his wife is a national and is currently residing. Dkt. 9 at 3.

5      On December 31, 2025, ICE conducted an interview with Petitioner.
6  Dkt. 1 at 2. Petitioner provided the address for a home where he can reside if
7  released and a potential sponsor. *Id.* Petitioner also "expressed full
8  willingness to comply with any conditions of supervised release, including
9  regular check-ins with ICE, electronic monitoring, and reporting of his
10 residence." *Id.*

11     At some other unspecified time, ICE officers attempted to have
12 Petitioner "complete forms prepared by the Russian governmental
13 authorities," which Petitioner refused to sign, out of a fear that completing the
14 forms would facilitate his removal to Russia. *Id.* Petitioner states that he
15 "does not possess any identity documents, including a passport or other travel
16 document," and that "[n]o valid travel document exists" to his knowledge. *Id.*
17 at 2. However, Petitioner indicates that he is willing to "cooperate in all
18 procedures that do not compel interaction with" Russian Federation
19 authorities. Dkt. 2 at 1-2. As of the time of the filing of the Petition,
20 immigration authorities have not provided Petitioner with a removal date,
21 purchased airline tickets, or facilitated interviews with any consulate. Dkt. 1
22 at 2.

23     During his time in confinement at Adelanto, Petitioner's mental health
24 has severely deteriorated. Petitioner attempted suicide and was subsequently
25 hospitalized in the facility's psychiatric unit for five days. *Id.* at 2. Medical
26 staff at the facility evaluated Petitioner and diagnosed him with major
27 depressive disorder. *Id.* Prior to his detention, Petitioner had no history of
28

1  "psychiatric crises." *Id*.

2  Petitioner filed the instant habeas petition on February 4, 2026. Dkt. 1. The same date, Petitioner filed a motion for a temporary restraining order ("TRO"), to prevent his removal from the United States pending the resolution of his petition. Dkt. 2. On February 5, 2025, the District Court issued an order enjoining Respondents from "transferring, relocating, or removing Petitioner from the Central District of California" pending the resolution of this action, and appointing the Federal Public Defender to represent Petitioner, should he be eligible for representation. Dkt. 4.

Respondents filed their Answer on February 16, 2026. Dkt. 6. Respondents attached the IJ's July 22, 2025, removal order, but included no declaration or other competent evidence supporting their Answer. Petitioner, by and through his counsel, the Federal Public Defender, filed a reply on February 18, 2026. Dkt. 9. The parties appeared for a hearing on February 19, 2026. Dkt. 5.

Both parties have consented to proceed before the Magistrate Judge. Dkts. 10, 11.

## II. DISCUSSION

Petitioner argues that his continued detention violates Section 1231(a)(6), as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not "reasonably foreseeable." Respondents claim that Petitioner is responsible for his ongoing detention because he has refused to cooperate with obtaining travel documents. Respondents argue that Petitioner's refusal to cooperate makes him ineligible for relief under *Zadvydas*.

For the reasons that follow, the Court concludes that Petitioner has demonstrated "good reason" to believe that his removal is not "reasonably

4

foreseeable," which shifts the burden to Respondents to rebut this showing. *Zadvydas*, 533 U.S. at 701. Respondents fail to do so. Respondents have not substantiated their claims that Petitioner has obstructed his removal or otherwise failed to cooperate in obtaining travel documents from Thailand. Accordingly, the Court finds that Petitioner's removal is not reasonably foreseeable and not authorized by Section 1231(a)(6).

### A. Detention Under 8 U.S.C. § 1231

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id*. at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id*. at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id*.

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id*. at 699. To effectuate this limit, the Court found it

1 "practically necessary to recognize some presumptively reasonable period of
2 detention," which it set at six months. *Id*. at 701. "After this 6-month period,
3 once the alien provides good reason to believe that there is no significant
4 likelihood of removal in the reasonably foreseeable future, the Government
5 must respond with evidence sufficient to rebut that showing." *Id*. Because the
6 statute only authorizes a "reasonable" period of detention to effectuate
7 removal, "as the period of prior postremoval confinement grows, what counts
8 as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

### B. Petitioner's Removal is Not Reasonably Foreseeable

Petitioner has been detained for over six months since his removal order became final on July 22, 2025, (Dkt. 1), which exceeds the "presumably reasonable period" of six months. *Zadvydas*, 533 U.S. at 701. The Court therefore considers whether Petitioner has shown "good reason" to believe that he will not be removed in the reasonably foreseeable future, such that the burden shifts to Respondents to rebut that showing. *Id*.

"'Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that.'" *Ashour v. Noem*, No. 3:26-cv-00422-RBM-SBC, 2026 WL 310198, at *2 (S.D. Cal. Feb. 5, 2026) (quoting *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019)). Courts have found that the "the passage of time combined with the government being no closer to repatriating a detainee than they were once they first took him into custody as being sufficient to meet that initial burden." *Senor*, 401 F. Supp. 3d at 430 (cleaned up).

Here, Respondents acknowledge that "ICE does not currently have travel documents for Petitioner to travel to Thailand, which is the country designated by Petitioner's removal order." Dkt. 6 at 3-4. However, they argue

1  that Petitioner has failed to cooperate with obtaining travel documents and
2  that therefore the 90-day removal period, during which detention is
3  mandatory, should be extended under 8 U.S.C. § 1231(a)(1)(C) (authorizing
4  the Government to "extend[]" the 90-day "removal period" and detain a
5  noncitizen who "fails or refuses to make timely application in good faith for
6  travel or other documents necessary to the alien's departure or conspires or
7  acts to prevent the alien's removal subject to an order of removal"). *Id.*
8       Respondents analogize Petitioner's case to *Pelich v. I.N.S.*, 329 F.3d
9  1057 (2003). *Id.* at 4. In *Pelich*, the Ninth Circuit found a Polish national was
10 not entitled to release under *Zadvydas*, where he had provided "conflicting"
11 biographical information, "refused to fill out a Polish passport application,"
12 and the Polish consulate had "explicitly reserved its determination" whether
13 to issue travel documents pending the submission of additional information,
14 "including the passport application." 329 F.3d at 1059. The petitioner
15 therefore had "the keys to freedom in his pocket" and "could likely effectuate
16 his removal by providing the information requested by the INS." *Id.* (cleaned
17 up). Under these circumstances, the Ninth Circuit concluded that Petitioner
18 remained lawfully subject to detention under 8 U.S.C. § 1231(a)(1)(C). *Id.* at
19 1061.
20      The circumstances here are substantially different than *Pelich*. Unlike
21 in *Pelich*, Petitioner has not refused to cooperate with the Government's
22 efforts to secure travel documents. Rather, Petitioner indicates that he only
23 objects to filling out documents that would lead to his removal to Russia,
24 where he fears persecution and his removal order bars his removal. *See* Dkt. 9
25 at 6. Petitioner remains willing to be removed to Thailand, where his wife is
26 national and is currently residing. *See Id.* at 3. Respondents submit no
27 evidence to contradict Petitioner's position or to otherwise substantiate that
28

7

Petitioner has refused to cooperate with his removal such that Section 1231(a)(1)(C) applies.

Based on this record, the Court concludes that Petitioner has met his initial burden to demonstrate "good reason" to believe that his removal is not reasonably foreseeable. The burden therefore shifts to Respondents to "rebut" Petitioner's showing. *Zadvydas*, 533 U.S. at 701. However, Respondents do not offer any argument or evidence to meet this burden, aside from claiming that Petitioner has failed to cooperate with the Government's attempts to obtain travel documents. However, as discussed, the record does not support that Petitioner is obstructing the Government's attempts remove him to Thailand. Respondents do not proffer any other evidence that they have taken steps towards effectuating Petitioner's removal to Thailand. On this record, Respondents have not met their burden to rebut Petitioner's showing that his removal is not "reasonably foreseeable."

Accordingly, the Court concludes that Petitioner's ongoing detention is not authorized by Section 1231(a)(6).

### III.   CONCLUSION

For the foregoing reasons, IT IS ORDERD that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release, subject to appropriate conditions under 8 U.S.C. § 1231(a)(3), including that he comply with the Government's efforts to secure travel documents to Thailand; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Dated: February 20, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE